UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

```
----------------------------:

NEFISSA KRAIEM,                 : Case No.: 19-cv-5160

              Plaintiff,    :

     v.                         :

JONESTRADING INSTITUTIONAL  : New York, New York

SERVICES, et al.,               : October 27, 2023

              Defendants.   :

----------------------------:
```

TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE STEWART D. AARON

UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For Plaintiff:     STULBERG & WALSH LLP
                   BY: James L. deBoer, Esq.
                       Robert B. Stulberg, Esq.
                   14 Wall Street
                   New York, New York 10005


For Defendants:    KAUFMAN BORGEEST & RYAN, LLP
                   BY:  Daniel H. Lewkowicz, Esq.
                   875 Third Avenue
                   New York, New York 10022
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          THE COURT:  Good morning.  This is
2    Magistrate Judge Aaron.  This is the matter of
3    Kraiem Against JonesTrading Institutional Services,
4    LLC; 19cv5160.  This line is being recorded.
5          I'd like to have the parties identify
6    themselves please for the record, starting with
7    counsel for the plaintiff.
8          MR. STULBERG:  Thank you, Your Honor.  Good
9    morning.  Robert B. Stulberg of the firm Stulberg &
10   Walsh, counsel of record, and my associate, James
11   deBoer, who will be arguing the letter motion.
12         MR. LEWKOWICZ:  Thank you.  My name is
13   Daniel Lewkowicz, and I'm counsel at Kaufman,
14   Borgeest & Ryan, and we are representing the
15   defendants in this matter.
16         THE COURT:  All right.  And did you
17   indicate you had somebody else on the line with you,
18   or am I mistaken?
19         MR. LEWKOWICZ:  No, no, just -- just I will
20   be appearing.
21         THE COURT:  Okay.  So I had a few questions
22   before I turn the floor over to the parties to make
23   whatever additional points they wish to make that
24   are independent of the letter submissions that were
25   made.  So this question is for the defense side.

```
 1              In the letter response that was filed on
 2    October 25th, at ECF 173, in footnote 2, I'm reading
 3    what it states:  "Defendants have communicated to
 4    plaintiff that they are amenable to expanding the
 5    period for discoverable documents through
 6    plaintiff's end of employment (through January 15,
 7    2018)."
 8              Have you done that, or that's just
 9    something that you offered?
10         MR. LEWKOWICZ:  So we've had numerous
11    discussions about the potential scope.  Originally I
12    articulated our position that we believe this really
13    should be narrowed to when the plaintiff actually
14    left the United States and after the events
15    occurred.  And so I've communicated that we'd be
16    willing to produce documents through January 15,
17    2018.  And, in fact, unilaterally, we did produce
18    documents through January 15, 2018, which was when
19    her termination ended with JTIL in the United
20    Kingdom.
21         THE COURT:  So the short answer to my
22    question is that you've already produced those
23    documents?
24         MR. LEWKOWICZ:  Yes.
25         THE COURT:  Okay.  Give me a second.
```

```
 1              My next question relates to -- let's see.
 2    So in plaintiff's reply that was filed -- please let
 3    me find it here -- at ECF 176 early this morning, it
 4    states at page three, and I'm quoting, "Defendants
 5    represent that they have separately already produced
 6    all documents containing plaintiff's name."
 7              And my question for the defendants, is that
 8    true?
 9              MR. LEWKOWICZ:  So not outside the time
10    frame that we believe should be -- that the -- that
11    the discovery should be limited to.
12              THE COURT:  But --
13              MR. LEWKOWICZ:  Included in our --
14              THE COURT:  Go ahead.
15              MR. LEWKOWICZ:  Included in our previous
16    productions were documents that would have
17    referenced any version of the names that were
18    provided by plaintiffs.  So "Nef," "Nefissa,"
19    "Nefissa SK," "Nefissa SK" with an extension.
20    "Nefissa Soraya Kraiem," "NK".  So any of those we
21    produced.
22              THE COURT:  All right.  So in plaintiff's
23    reply that is filed at ECF 176, on pages two and
24    three, appear hit counts for certain terms.  And,
25    for example, the term "ass," A-S-S, it says 67.  And
```

1    that number appears to the Court to come from

2    Exhibit B to defendant's September 13, 2023 letter

3    that was filed at ECF 171-10 on page eight.  Those

4    numbers match up.

5            Now, when I look at that exhibit, there's a

6    footnote 13 on PDF page eight, which appears -- at

7    the top it says -- of Exhibit B, 171-10 PDF page

8    eight it says, "keyword".  There's footnote 13.  At

9    the bottom it says, (narrowed by) "AND," and then

10   the various permutations you just mentioned,

11   "Kraiem" or "Nef" or "Nefissa," et cetera.

12           If you've already produced documents

13   containing her name, then everything you have listed

14   here already would have been produced.  Or am I

15   missing something?

16           MR. LEWKOWICZ:  So this proposal was for --

17   these were the hit counts for documents that dated

18   all the way to, I believe, January 2017, right.  So

19   these are more documents than we were necessarily

20   agreeing to, because in our objections we said we

21   believe the time period should be limited.  But

22   based on a broader time frame, these are the number

23   of document hit counts we're receiving.  So I don't

24   believe --

25           THE COURT:  All right.  So you have to tell

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   me what time period these keywords related to.

2           MR. LEWKOWICZ:  Right.  These exhibits, I

3   believe, would have been all hit counts for January

4   2017 through January -- through actually March 2018.

5   So slightly larger.  But these were the hit counts

6   we had when we asked our vendor to tell us how many

7   times the word "ass" would appear in connection with

8   these particular names or perceived names for

9   plaintiff.

10          THE COURT:  All right.  And have you -- so

11  there's overlap then, right?

12          MR. LEWKOWICZ:  Yes.

13          THE COURT:  So some of these documents

14  already would have been produced?

15          MR. LEWKOWICZ:  Yes.

16          THE COURT:  All right.  And in terms of

17  what you have uploaded already with your vendor to

18  the document review platform, do you have documents

19  dating back -- ESI dating back to May 25, 2016,

20  which is the date that this plaintiff started

21  working in the UK?

22          MR. LEWKOWICZ:  Yes.

23          THE COURT:  And do you already have

24  uploaded to the ECF -- excuse me, the ESI review

25  platform just documents going through January 15 of

1   2018, which is the date that her employment ended?

2         MR. LEWKOWICZ:  Yes.

3         THE COURT:  Okay.  All right.  Just give me

4   a second.  Just writing some notes.

5         And one point of clarification in footnote

6   13 in ECF 171-10.  That's the letter that I

7   mentioned back from September.  There's a hyphen

8   between the search term "Nefissa-SK".  There's a

9   hyphen between "Nefissa" and "SK".  But in the

10  letter that you filed at ECF 173, your response

11  letter page three, there is no hyphen.  It would

12  make sense to me that there shouldn't be a hyphen,

13  because that wouldn't -- but I just wanted to make

14  sure.

15        MR. LEWKOWICZ:  Sure.  I can double check

16  what the actual -- I may not have that exact thing

17  in front of me, whether -- I don't believe there was

18  a hyphen in what was actually applied by the vendor,

19  but I can always double check and let the Court

20  know.

21        THE COURT:  All right.  Just give me a sec.

22        So a question for plaintiff's counsel.

23  Have any depositions been taken in this case?

24        MR. deBOER:  Not yet, Your Honor.  We have

25  scheduled depositions with defendants.

```
 1              THE COURT:  Those are the ones that are set
 2      forth in the letter filed yesterday evening?
 3              MR. deBOER:  Yes, that's correct, Your
 4      Honor.
 5              THE COURT:  Okay.  All right.  Those were
 6      all the questions that I had for now.  I'm happy to
 7      hear.  So keeping in mind that I've reviewed the
 8      parties' submissions, I'm happy to hear whatever
 9      else the parties wish to say about the pending
10      letter of motion.  So I'll start with plaintiff's
11      counsel.
12              MR. deBOER:  Thank you very much, Your
13      Honor.
14              I wanted to highlight the ruling that Judge
15      Carter made on January 24, 2022, in which he
16      denied --
17              THE COURT:  Do you mean 2022 or -- just
18      want to make sure I have the year right.
19              MR. deBOER:  Yes, that's correct.  And I
20      can give you the docket number as well, Your Honor,
21      for that.  That is docket 145.
22              THE COURT:  Okay.  So you're not referring
23      to the first decision that he rendered, which was
24      back in September of 2020.  You're talking about his
25      ruling from January of 2022, okay.
```

1          MR. deBOER:  Yes, that's correct.  I

2    believe we might have referenced the earlier ruling

3    at some juncture relating to the criteria for joint

4    employer factors.

5          In the January of 2022 ruling, Judge Carter

6    held that numerous paragraphs of plaintiff's

7    complaint should not be struck because, I quote,

8    "they offer relevant context of the actionable

9    claims in this case."

10         So Judge Carter already held that

11   paragraphs in the complaint describing activities of

12   a harassing nature that plaintiff experienced prior

13   to April 27, 2017, are relevant for understanding

14   the allegations, the operative allegations in the

15   complaint.

16         So our position is we do not see any reason

17   for why defendants would limit the period of

18   discovery to April 27th to January 15th of 2018.

19   Because, as Judge Carter will -- incidents that

20   happened before then, names that plaintiff was

21   called that happened before then are relevant.  And

22   they're relevant whether people, Jones managers and

23   supervisors called her those sexist terms to her

24   face, or as the Second Circuit has held in *Torres v.*

25   *Pisano* at 116 F.3rd 625 at 633.

        AMM TRANSCRIPTION SERVICE - 631.334.1445

1          The fact that statements might not have

2     been made to her face but behind her back are also

3     relevant for establishing discrimination claim.  So

4     the time frame should not be unduly narrowed, nor

5     should the search terms be restricted to terms that

6     already contain plaintiff's name.  Because, as the

7     defendants have explained, they have agreed to

8     produce documents with plaintiff's name from the

9     period.  And I do apologize that might not have been

10    the clearest that it could have been in our

11    submission.  But from April 27, 2017 through January

12    15, 2018, all documents containing plaintiff's name.

13         Well, there are a number of instances, and

14    I'd have to go back and confirm if we have the

15    correct numbers, but there's a number of instances

16    in which plaintiff is referred to by a term, but her

17    name does not appear in the document.

18         An example of that is included as Exhibit

19    12, where plaintiff's supervisor, Gary Cunningham,

20    refers to the plaintiff as "Princess" and doesn't

21    have any mention of her name.  So this indicates

22    that management is calling her names, derogatory,

23    sexist names behind her back in documents that do

24    not also contain her name.

25         So that restriction does not hold water

1    because, in fact, documents referring to plaintiff
2    by a derogatory term without her name might be very
3    probative of the mentality of plaintiff's managers
4    and supervisors at Jones and the individual
5    defendants.
6             THE COURT:  A question for you.  So I see
7    this document you're referring to is attached to
8    your reply.  What search term, or how was this
9    document obtained?  Why is it that this document was
10   produced; do you know?
11            MR. deBOER:  Yes, Your Honor.  Defendants
12   did agree to produce documents containing a small
13   handful of terms that do not also contain
14   plaintiff's name, so I could tell you what those
15   terms are.  "Princess" was one of them.  I'm sorry.
16            THE COURT:  So they did agree to produce
17   "Princess"?
18            MR. deBOER:  Yes, that's correct.
19            THE COURT:  So this example of what they
20   were referring to your client as, they've already
21   produced "Princess"?
22            MR. deBOER:  Yes, that's correct.  So
23   they've produced "Princess".  They haven't produced
24   the word -- I'm going to spell it out just to avoid
25   impropriety -- but B-I-T-C-H, which is a word that

1    plaintiff has informed us she believes she was

2    called by management.  But we don't have documents

3    in which that word appears, but not plaintiff's

4    name.

5         THE COURT:  Well, if one is speaking in a

6    derogatory manner about someone, was there more than

7    one woman who worked at this entity in the United

8    Kingdom or in the United States?

9         MR. deBOER:  There are very few, Your

10   Honor.  Plaintiff was the only female trader at the

11   London office.  There were, I believe, three out of

12   maybe 100 female traders in other locations at.

13   Jones.

14        THE COURT:  Okay.  But my point is, put

15   aside traders, there'd be any number of people who

16   inappropriately used that phrase if these folks

17   threw that phrase around.  That's my only point.

18   Whereas, someone who's a "Princess" presumably

19   refers to a single person.  But maybe I'm wrong.

20        MR. deBOER:  Well, Your Honor, our position

21   is we're entitled to documents in which defendants

22   are referring to plaintiff by derogatory terms,

23   whether or not her name is included.  If there are

24   documents --

25        THE COURT:  I know, but the problem that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    you have is, if you want them to search all their

2    e-mails for the word B-I-T-C-H, that doesn't seem to

3    me to be proportional to the needs of the case, but

4    okay, I hear your point.  I hear your argument.  You

5    can continue.

6           MR. STULBERG:  Your Honor, Robert Stulberg.

7    I just wanted to --

8           THE COURT:  Mr. Stulberg, obviously I'm

9    happy to hear from you, but -- go ahead, I didn't

10   know it was going to be double-teamed.  Go ahead.

11          MR. STULBERG:  I will not say anything if

12   Your Honor prefers.

13          THE COURT:  No, go ahead.  You want to make

14   a point about the B-I-T-C-H word?  Proceed.

15          MR. STULBERG:  Yes.  The relevance of that

16   word and a number of others quite like it to this

17   case is, not only that they were used to refer to

18   our client, but that they were used in the

19   workplace, characterized women in general.

20          And our contention is that our client has

21   been or was subjected to a hostile work environment.

22   And the use of those types of terms in the middle of

23   a workplace are obviously hostile to women.  So I

24   just wanted to mention that, lest these words be

25   viewed as relevant only with respect to Nefissa

1    Kraiem.

2             THE COURT:  No, but look, here's what the

3    issue is.  The issue is you're not representing

4    women in a class action against the joint employers

5    here, the alleged joint employers.

6             You have a client who claims that certain

7    incidents occurred here in the United States that

8    are actionable.  In April in Texas, in May in

9    Connecticut and in July, all of 2017 in New York

10   City.  And sexual harassment or a hostile work

11   environment writ large of the entire organization,

12   you conducting discovery class-wide, for lack of a

13   better term, doesn't seem to me to be proportional

14   to the needs of the case.

15            But look, I hear your argument, and I'm

16   ready to hear what additional arguments you have.

17            MR. STULBERG:  Thank you, Your Honor.  I

18   turn it back to Mr. deBoer.

19            MR. deBOER:  Yes, thank you, Your Honor.

20   And I do see now, I'm referring to Exhibit 6, which

21   is the July 20, 2023 letter from defendants.  And

22   this letter also contains tallies of search terms.

23            THE COURT:  Could you give me an ECF

24   number?  Sorry, just while following along.

25            MR. deBOER:  Yes, I beg your pardon, Your

```
 1    Honor.  So this is going to be document 171, and
 2    then it's Exhibit 6 of that submission.
 3              THE COURT:  Okay.  So hold on.  I'm just
 4    clicking it.  So it's 171-6?
 5              MR. deBOER:  Yes, I believe so.
 6              THE COURT:  Okay.  And this is a July 20
 7    letter?  That's what you're referring to?
 8              MR. deBOER:  Yes, Your Honor.
 9              THE COURT:  And what page?  I'm sorry.
10              MR. deBOER:  And now I'm on page two of
11    that letter.
12              THE COURT:  Okay.  I'm there.
13              MR. deBOER:  And I'm looking at the second
14    to last line where there's a tally for how many
15    times the word that we're seeking occurs.
16              THE COURT:  Yeah, that's not this letter
17    because this letter on page two is -- talks about
18    interrogatories.
19              What oftentimes happens is the numbers
20    don't line up with the 171-6, you know what I mean?
21    It doesn't line up with exhibit numbers.  So let me
22    go to the --
23              MR. deBOER:  Yeah, there were a couple of
24    things on the same date.
25              THE COURT:  So are you at your computer to
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    tell me what -- oh, maybe it's seven.  Seven says,
 2    defendant's tally of search term results.
 3              MR. deBOER:  Yes, Your Honor.  That's the
 4    one.
 5              THE COURT:  Okay.  All right.  I've clicked
 6    on that.  Hold on.
 7              Okay.  So you're at the bottom of which
 8    page?
 9              MR. deBOER:  Page two.
10              THE COURT:  Okay.  I'm there.  I see a list
11    of search term hits.  Family action note.
12              Okay.  Which one are you calling to my
13    attention?
14              MR. deBOER:  Still on the B-I-T-C-H, and
15    there's 74 hits and 83 in the family.
16              THE COURT:  Okay.
17              MR. deBOER:  And this section is reflecting
18    the tally for the search results for one group of
19    custodians.  And then on page eight there's another
20    tally reflecting the number of results for a
21    different set of custodians.  And on the other page
22    that same word appears -- this is page eight --
23    appears on about the 10th line, 12th line.
24              THE COURT:  Okay.
25              MR. deBOER:  So the point I'm making here
```

1    is that there are certain terms that we realize are

2    going to be voluminous, but there are other terms

3    that certainly are not going to be voluminous and

4    would be very much proportional to the needs of the

5    case, especially given plaintiff's understanding

6    that she's been called these terms.

7            THE COURT:  Okay.

8            MR. deBOER:  Thank you, Your Honor.

9            The other point that I'd like to make on

10    this topic is certain requests that we've made for

11    documents that defendants have denied altogether.

12    And these are requests 11 and 12, which seek

13    documents relating to use and abuse of controlled

14    substances at Jones.  And then request 16 for all

15    JonesTrading International Limited employment

16    contracts, which would be relevant to demonstrating

17    the joint employer factors, which includes

18    centralized control of labor relations.  And then

19    documents 50 through 52, which pertain to --

20    document request 50 to 52 pertain to Mary Moser, who

21    was -- I'm not quite sure her title, but she was

22    acting as human resources director for both JTIS and

23    JTIL during all relevant times.

24            And our last point that we do discuss in

25    the response is that other complaints of harassment

1    are highly relevant, as many Courts have found, to

2    establishing the likelihood of plaintiff's

3    allegations.  And courts routinely extend the period

4    for which those complaints are discoverable beyond

5    the time of the plaintiff's employment.

6             So for that reason, defendant's limitation

7    from April 27 through January 15 -- April 27, 2017,

8    through January 25, 2018, is unwarranted.

9             THE COURT:  All right.

10            MR. deBOER:  If Your Honor has any further

11   questions, I'd be happy to assist as I'm able.

12            THE COURT:  Yeah, I don't at the moment.

13            Let me hear from defense counsel

14   recognizing that I've read all the submissions, but

15   go ahead.

16            MR. LEWKOWICZ:  Thank you, Your Honor.  I

17   don't want to belabor the point.  And especially

18   since you've read all the submissions.

19            I feel there's an element of nitpicking

20   that's taking place here as to particular words that

21   the party believes are only coming up in narrow

22   hits, but still may not be relevant because a

23   person, for example, may say "that person is

24   bitching about this," as opposed to referring to the

25   plaintiff in any way as "a bitch".  And so narrowing

1    it by search parameters, we believe, is a very
2    valuable way to get to only relevant documents as
3    opposed to any document that may exist across 25
4    custodians, across 23 offices, across the whole
5    institution.
6           These documents are not just emails, but
7    also Bloomberg instant chats, where people are
8    engaging in very long conversations that may
9    periodically be talking about family relations,
10   conversations they had with clients, things wholly
11   unrelated to this case, to the plaintiff or to just
12   anything that occurred here.  Some of these are even
13   just news articles that come up.  And these words
14   appearing, for example, even though we provided the
15   word -- documents with the word "Princess" in it
16   because it was a very specific reference that
17   plaintiff's counsel identified for us.  You know,
18   the word "Princess" appears in conversations when
19   people are talking about bringing their children to
20   Disneyland.  Lion King in referring to actually
21   going to the play, Lion King.
22          So that's why these documents, without any
23   search parameters become extremely voluminous in
24   nature.  And our proposal was really referencing the
25   narrowing of search terms by search parameters to

1   get even this voluminous number of documents.  But
2   if you look at the word "entertainment," for
3   example, in Exhibit B to our proposal to plaintiff
4   on September 13, that still produces 960 documents.
5   If we actually look at what that word would produce
6   without any narrowing, we're getting over 6,500
7   hits.  And we find that for many of the very broad
8   words that are referred to.
9        That is also one of the problems with,
10   aside from our objection as to just broadly
11   searching for any reference to anything that might
12   have to do with any potential drug, alcohol or kind
13   of these bizarre allegations about sex workers, they
14   include the word "green" in their keywords.  I
15   presume "green" is a reference to marijuana, but the
16   word "green" has a hit count, just a hit count of
17   over 16,600 documents.
18        And then with "family," which we're
19   required to -- we would be required to review,
20   elevates almost to 36,000 hits.  I mean this is --
21   given especially what we've produced to date, this
22   is just in no way proportionate to the needs of this
23   case, especially in light of the fact that we're
24   really talking about, at best, eight days that the
25   plaintiff spent for the entire year of her

```
 1    employment with JTIL in the United States
 2    whatsoever.  To broaden the period beyond not only
 3    these eight days, but beyond her period of
 4    employment, it just -- it seems like it's a fishing
 5    expedition.  And as we stated in our submission, it
 6    seems almost harassing.  It would cost us an
 7    exorbitant amount of money to review these documents
 8    for privilege, for relevancy.
 9          And then presumably, even if we were to
10    provide these documents, we would receive more
11    requests from plaintiff's counsel.  To date, we have
12    not had really a response to our proposal from
13    plaintiff that in any way seems to be working
14    collaboratively with us to find a way to narrow the
15    number of documents that they're seeking.  It really
16    seems like they're looking broadly for just about
17    anything that might have occurred at any one of our
18    offices, even ones that plaintiff had never worked
19    across, been in, you know, whatsoever.
20          That being said, we've communicated to
21    plaintiff's counsel that we had HR specifically look
22    for documents related to the joint employer
23    allegations, and that we collected and produced and
24    provided debate numbers for organizational charts
25    for JTIL and JTIS, documents related to labor
```

1    relations, management and ownership data.  And that

2    was all produced.  And we told them that we don't

3    have more relevant documents in that regard.  They

4    also have all the communications that may have

5    occurred between Mary Moser, who was a consultant,

6    not an employee at the time, and thus doesn't have a

7    personnel file, and those communications and

8    interactions have already been provided.

9             Further, we've also communicated that HR

10   confirmed to us that there are no complaints that we

11   have about harassing, abusive, discriminatory

12   conduct that occurred at -- or otherwise at JTIS, or

13   relate to any of the individual defendants in the

14   case.  And that was communicated.

15            So, you know, these ESI terms are really

16   just meant to be a backup to our obligation to find

17   relevant documents.  And they really need to be

18   tailored in a way that ensure that only relevant

19   documents are identified, especially given the fact

20   that this case is far narrower than maybe other

21   employment-related disputes that are being referred

22   to in cases cited by opposing counsel.

23            So unless you have any questions for me,

24   that's pretty much our position on this.

25            THE COURT:  All right.  I don't.

```
 1              Any final comment by plaintiff's counsel?
 2              MR. deBOER:  Yes, Your Honor.
 3              Defendant's counsel just stated that
 4    they've given us, produced to us a number of joint
 5    employer-related documents and other complaints
 6    about -- that other people have lodged with Jones of
 7    abusive or harassing nature.
 8              THE COURT:  Well, to be clear, what I heard
 9    him say is that there weren't complaints about the
10    latter and that he had produced the former.
11              MR. deBOER:  Yes, Your Honor.  The one
12    complaint was plaintiff's own complaint that we've
13    received.  That, I believe -- although I'd be happy
14    to be mistaken, but I believe that that is still
15    narrowed to the period for all of the above, April
16    27, 2017 through January 15, 2018, which for the
17    reasons that I mentioned earlier, is an
18    inappropriate limitation.
19              THE COURT:  Okay.
20              MR. deBOER:  And just to reiterate, the
21    defendant's contention that the facts of the
22    operative allegations of this case being limited to
23    eight days, again, ignores the earlier ruling by
24    Judge Carter that the context is relevant, and
25    therefore, provides important background information
```

1    to understand what exactly happened in those eight

2    days, and why a reasonable woman would have

3    experienced the harassment, the sexual bullying in

4    the way that plaintiff did as harassing events.

5              THE COURT:  All right.

6              MR. LEWKOWICZ:  Your Honor, if I may, on

7    just one small point as far as providing context.

8              THE COURT:  Very briefly.

9              MR. LEWKOWICZ:  Very briefly.

10             On August 4, we provided back to plaintiff,

11   all of the documents we have in our possession that

12   relate to any of the claims, assertions or

13   proceedings that occurred in the United Kingdom,

14   which may also include some of these context-based

15   documents that they say they need now.  But many of

16   these documents have already been exchanged by the

17   parties during a very long protracted dispute that

18   has already been dropped with prejudice in the

19   United Kingdom.

20             THE COURT:  All right.  Here's my ruling:

21             The Court has great familiarity with this

22   case, which was filed over four years ago in May

23   2019.  The central allegations made by plaintiff in

24   this case are that she suffered harassment and

25   retaliation as a result of the incidents that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   occurred in Dallas, Texas in April 2017; Greenwich,
2   Connecticut in May 2017; and in New York City from
3   July 10 to July 16, 2017.
4           Following the filing of an amended pleading
5   by plaintiff in December of 2019, District Judge
6   Carter in September 2020 granted in part and denied
7   in part a motion to dismiss that was filed by
8   defendants; see *Kraiem against JonesTrading*, 492
9   F.Supp. 3d 184 out of the Southern District of New
10  York, obviously in 2020.
11          On November 17, 2020, plaintiff filed her
12  second amended complaint at ECF 81.  In an order
13  dated December 2, 2020, Judge Carter stated that it
14  was not apparent from the pleading that was filed
15  that his limited permission regarding an amended
16  pleading was complied with and granted plaintiff
17  leave to file a motion to amend in support of making
18  the second amended complaint that was on file
19  operative.  I'm referring to Judge Carter's December
20  2, 2020 order filed at ECF 83.
21          On December 31, 2020, plaintiff filed her
22  motion to amend at ECF 87.  In an opinion and order
23  dated May 26, 2021, Judge Carter granted in part and
24  denied in part plaintiff's motion.  That's *Kraiem*,
25  2021 Westlaw 2134818 decided, again, May 26, 2021.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          On August 5, 2021, plaintiff filed a motion
2     to supplement her pleading.  Judge Carter thereafter
3     referred that motion to me.  In an opinion and order
4     dated November 12, 2021, I denied plaintiff's motion
5     to supplement.  That's 571 F. Supp 3d, page 53.
6          After some further litigation regarding
7     plaintiff's pleading, plaintiff filed on January 24,
8     2022, a document she entitled as her Second Amended
9     Complaint at ECF 146.  That's the operative pleading
10    at the moment.
11         The Court notes that during the period May
12    2019 to January 2022, the ECF docket reflects that
13    no stay of discovery had been issued by the Court.
14    The ECF docket then reflects no activity between
15    March of 2022, when defendants filed their answer
16    until February of 2023, when the Court directed that
17    a status report be filed.  During this entire
18    period, plaintiff could have and should have been
19    conducting discovery.
20         On February 10, 2023, the Court entered an
21    order setting the fact-discovery deadline as June
22    30, 2023 and the expert discovery deadline as July
23    31, 2023.  That's ECF 153.  The Court's order
24    stated, I'm quoting, "The foregoing deadlines may be
25    extended only for good cause shown, and then any

1   extensions will be granted only for a limited

2   purpose."

3           On March 31, 2023, the parties filed a

4   joint letter as required, stating that discovery was

5   ongoing.  That's ECF 155.  On May 2, 2023, the

6   parties requested, and on May 3, the Court granted

7   an extension of the fact-discovery deadline until

8   August 29, 2023, and an extension of the expert

9   discovery deadline until September 29, 2023.  That's

10  ECF 158.

11          The letter seeking the extension mentioned

12  the various unfortunate family emergencies that

13  Attorney Stulberg was encountering at that time.

14          On May 19, 2023, the next joint discovery

15  status letter was filed, which the Court endorsed on

16  May 22.  The Court's endorsement stated in relevant

17  part, and I'm quoting, "The Court expects the

18  parties to work diligently to meet discovery

19  deadlines."  That's ECF 161.

20          On July 29, 2023, the Court granted the

21  latest discovery extension, stating, "Fact discovery

22  shall be completed by 10-31-2023, and expert

23  discovery shall be completed by 12-1-2023."  And the

24  order continues, "No further extensions shall be

25  granted absent exigent circumstances.  And if any

1   further extensions are granted, they shall be for

2   limited specific purposes."  That's ECF 168.

3          On September 28, 2023, more than one month

4   prior to the expiration of the fact-discovery

5   deadline, plaintiff filed another letter seeking a

6   discovery extension, which the Court denied without

7   prejudice, while noting the fact discovery did not

8   close until October 31, 2023.  That's ECF 170.

9          On October 23, 2023, eight days before the

10  current fact-discovery deadline, plaintiff filed a

11  letter motion that is now before the Court seeking

12  to compel production of documents.  That's ECF 171.

13         Together with exhibits, plaintiff's letter

14  motion consists of 175 pages.  Defendants filed a

15  letter in response on October 25.  That's ECF 173,

16  and plaintiff filed a reply very early this morning

17  at ECF 176.

18         In addition, yesterday evening the parties

19  filed yet another letter seeking -- letter motion

20  seeking the extension of discovery deadlines.  ECF

21  175.  That brings us up to date and informs the

22  Court on its decision on the plaintiff's motion to

23  compel.

24         Under Rule 26(b)(1), parties may obtain

25  discovery regarding any non-privileged matter that

1    is relevant to any party's claim or defense, and

2    proportional to the needs of the case.  Considering

3    the importance of the issues at stake in this

4    action, the amount in controversy, the parties'

5    relative access to relevant information, the

6    parties' resources, the importance of the discovery

7    in resolving the issues, and whether the burden or

8    expense of the proposed discovery outweighs its

9    likely benefit.

10         The Court is vested with discretion in

11    determining what is proportional to the needs of the

12    case.  At this late stage of the discovery process,

13    in a four-year old case, the Court only shall order

14    production of documents it finds important the

15    limited issues at stake in this case.

16         The Court thus rules in its discretion as

17    follows:

18         One -- and I'll be issuing a written order

19    setting forth the operative portions of what I'm

20    about to say so that it'll be crystal clear.

21    Anybody obviously can order this entire transcript,

22    should they choose to do so.

23         The Court is ordering as follows:

24         One, within 14 days, to the extent not

25    already produced, defendant shall produce responsive

1    documents for the time period May 25, 2016 through
2    January 15, 2018, using the search terms that are
3    set forth in pages two and three of plaintiff's
4    reply filed at ECF, Number 176 (is narrowed by)
5    "AND" in block caps (Kraiem) or (Nef) or (Nefissa)
6    or (Nefissa SK) or (Nefissa SK*) or (Nefissa-SK*) or
7    "Nefissa Soraya Kraiem" or "NK," but excluding the
8    terms, "beauty" and "girl".  The hit counts I found
9    to be too high on those.  And since I'm making them
10   go back earlier in time, I don't find it
11   proportional to the needs of the case to include the
12   terms, "beauty" and "girl".
13          The purpose of the Court's ruling here is
14   to capture documents that related to this plaintiff
15   that were prior to the date that she came to the
16   United States to give the context.  However, the
17   Court finds it is not appropriate to just search for
18   terms like B-I-T-C-H throughout the entire
19   organization for the period prior to that time.
20          The documents in the Court's discretion --
21   the important documents are the ones that make
22   reference to the plaintiff.
23          Second, with respect to the so-called joint
24   employer status of JTIS and JTIL, the Court finds
25   that the documents sought by plaintiff are not

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    proportional to the needs of the case.
2           However, plaintiff may ask questions to the
3    defendant's Rule 30(b)(6) designee, regarding the
4    joint employer issue.
5           Third, in all other respects, plaintiff's
6    motion to compel is denied, and the parties are
7    directed to proceed with the depositions referred to
8    in ECF Number 175.
9           Now, look, the Court empathizes with
10   Attorney Stulberg's family and personal medical
11   situation, and my heart goes out to you; however,
12   your law firm website lists five other attorneys in
13   your firm in addition to Attorney deBoer, who is on
14   this call and who is also counsel of record in this
15   case.  And I am to bring discovery to a close, and
16   that's what I intend to do.
17          Thus, the Court will extend discovery
18   deadlines one last time, but not as long as been
19   requested in the letter filed yesterday evening.  At
20   the end of September, plaintiff requested a 60-day
21   extension of discovery deadlines, that is, until
22   December 31.  Now plaintiff is asking for an
23   extension until January 15, 2024.
24          The Court would have expected the plaintiff
25   to request a shorter, not a longer discovery

1    extension after an additional month had gone by.

2            The Court -- and I might add reluctantly,

3    extends fact discovery to January 3, 2024 and the

4    deadline for expert discovery until February 5,

5    2024.  Those are the dates when all court-sanctioned

6    discovery shall be completed.

7            You folks want to conduct additional

8    discovery between yourselves, have at it.  But any

9    discovery that's going to be authorized by the Court

10   and under the Court's supervision is going to be

11   done by these dates.

12           The Court will be entering an order

13   following the conference, granting a part and

14   denying a part the letter motions filed at ECF 171

15   and 175, as previously stated during this

16   conference.

17           Anything else from either side?

18           MR. STULBERG:  Your Honor, Robert Stulberg.

19   I just wish to thank the Court for its ongoing

20   expressions of understanding of my family situation.

21   And we very much appreciate the courtesies that have

22   been extended by the Court over the course of this

23   last year.

24           THE COURT:  All right.  Noted.

25           Anything from the defense side?

1             MR. LEWKOWICZ:  No.

2             MR. deBOER:  That is all.

3             MR. LEWKOWICZ:  Thank you so much, Your

4    Honor.

5             THE COURT:  All right.  This matters is

6    adjourned.  Thank you.

7

8                          0o0

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                     C E R T I F I C A T E

 2

 3       I, Adrienne M. Mignano, certify that the

 4   foregoing transcript of proceedings in the case of

 5   Kraiem v. JonesTrading Institutional Services;

 6   Docket #19CV5160 was prepared using digital

 7   transcription software and is a true and accurate

 8   record of the proceedings.

 9

10

11   Signature  __Adrienne M. Mignano____

12               ADRIENNE M. MIGNANO, RPR

13

14   Date:      November 7, 2023

15

16

17

18

19

20

21

22

23

24

25
```